Barney, J.,
delivered the opinion of the court:
This is a suit for balances alleged to be due upon a contract for repair work on Dam No. 1, Green River, Ky. The following is a summary of the several claims made by the plaintiffs:
Loss oí profits by deficiency in eartli excavation furnished
them_ $896. 60
Cost of obtaining material warranted by paragraph 33 to be ■ present at the site- 2,184. 08
*242 Excess of cost of excavating sediment over excavation of material warranted by paragraph 33- $.295. 89
Excess of cost of excavating crib in the backing over the cost of excavating material warranted by paragraph 33_ 5, 827. 52 Deduction for inspection_ 800. 00
Total_ 10,004.09
Before proceeding to discuss the merits of the case it is necessary to dispose of the point raised by the defendants that this suit should be dismissed because, as it is claimed, the contract upon which it is founded was transferred within the provision of section 3737 of the Revised Statutes, which is as follows:
“No contract or order, or any interest therein, shall be transferred by the party to whom said contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States are concerned. All rights of action, however, for any breach of such contract by the contracting parties are reserved to the United States.”
The findings upon this subject show that in April, 1903, but after the execution of the contract on question, a corporation called the Hollerbach & May Contract Co. was organized under the laws of the State of Indiana, 90 per cent of the stock'of which was taken by the plaintiffs and the balance by relatives. This corporation performed the work called for under the contract to the extent that the accounts relating to its performance were carried on in its books of account; but the claimants continued in active personal charge of the work until its conclusion; all of the correspondence with the Government relating to it was carried on in their name, and all payments were made to them. The partnership of Hollerbach & May continued, at least so far as this contract was concerned, until its completion, and the corporation did all that was done by it for and under the direction of the partnership. We do not think these facts show any transfer of said contract or any' interest therein within the meaning of section 3737 of the Revised Statutes, or, in fact, of any transfer of any interest in the contract whatsoever. . The plaintiffs never relinquished the complete control and management nor any of the emolu- *243 merits of the contract, and the work done by the corporation was not different in character or effect from that of any other employee. We do not think the cases cited by the Government upon this question have any application to a case like this, but rather that it is controlled by the reasoning in Hobbs v. McLean (117 U. S., 567-575).
We will now consider the several items of the plaintiffs’ claim in the order as hereinbefore given.
The first item claimed is for loss of profits by reason of the deficiency in the earth excavation furnished. The amount of earth excavation required by the contract was 3,970 cubic yards, with a permissible increase or decrease of 20 per cent, thus leaving a minimum of 3,176 cubic yards. The findings show that the plaintiffs were furnished 1,183.55 cubic yards of earth excavation and 633.5 cubic yards of other material classified as crib excavation, for which they were paid at the contract price, thus making in all 1,817.05 cubic yards excavated, and this amount deducted from the minimum as provided in the contract leaves 1,358.95 cubic yards’ deficiency, on account of which the plaintiffs are entitled to recover the profit which they would have made if the earth excavation had been as represented, and which profit the findings show to be $475.63, and this item is allowed in that sum.
The next three items of the plaintiffs’ claim are for damages alleged on account of what is contended to be a breach of warranty under paragraph 33 of the specifications, and can be grouped and considered together, as they all depend upon the construction of the same provisions in the specifications. The following are the paragraphs of the specifications which are to be considered in the decision as to these items:
“ 20. It is understood and agreed that the quantities given are approximate only, and that no claim shall be made against the United States on account of any excess or deficiency, absolute or relative, in the same. Bidders, or their authorized agents, are expected to examine the maps and drawings in this office, which are open to their inspection, to visit the locality of the work, and to make their own estimates of the facilities and difficulties attending the exe *244 cution of the proposed contract, including local conditions, uncertainty of weather, and all other contingencies.
' sfc % $ % ‡
“33. The present dam, a wooden crib structure, is 528 feet long between abutments and about 52 feet wide at its base. The expected depth of concrete work is shown on the blue prints, but it may be made greater as the condition of the old timber may render it necessary. The work shall be carried out in sections, generally from 50 to 100 feet long, and no more of the old work shall be torn out than, can lie rebuilt in a few days in case of necessity. 'All the exterior surfaces of the concrete shall be faced with the facing described in paragraph 59, which shall be placed before the concrete below has set, and shall be smoothly finished off. The dam is now backed for about 50 feet with broken stone, sawdust, and sediment to a height of within 2 or 3 feet of the crest, and it is expected that a cofferdam can be constructed with this stone, after which it can be backed with sawdust or other material. The excavation behind the dam will be required to go to the bottom, and it is thought that a slope of 1 horizontal to 1.2 vertical will give ample room.
»[! í
“60. Blue prints. Blue-print drawings showing the method of construction may be seen at this office; they shall form a part of these specifications and shall not lie departed from except as may be found necessary by the condition of the old timber encountered.
$ $ * * *
“70. Investigation. It is expected that each bidder will visit the site of this work, the office of the lock master, and the office of the local engineer and ascertain the nature of the work, the general character of the river as to floods and low water, and obtain the information necessary to enable him to make an intelligent proposal.” ■
‡ $
It is contended by the plaintiffs that the following extract, from paragraph 33 above quoted, is a representation amounting to a warranty:
“The dam is now backed for about 50 feet with broken stone, sawdust, and sediment to a height of within 2 or 3 feet of the crest.”
As the findings show that the dam was not backed with “broken stone, sawdust, and sediment, as represented in *245 paragraph 33 above quoted,” at least only to a small extent, and that below a covering of sediment was found the crib-work of an old dam of solid logs filled with large stones, which was very expensive in its excavation, and no part of which could be used in the construction of the cofferdam, the decision upon this contention will settle this branch of the case. We have thus before us for decision the old question so often presented in this court in the construction of Government contracts, When does a representation amount to a warranty, and how far is it modified by other provisions of the contract? If paragraph 33 stood alone in the contract' for construction' we believe the extract quoted should be regarded as a warranty as to the material backing the dam. It was a positive and material representation as to a condition presumably within the knowledge of the Government, and upon which, in the absence of any other provision or warning, the plaintiffs had a right to rely. We are compelled, however, in the construction of this provision to take into account other provisions of the specifications, notably paragraphs 20 and 70. In paragraph 20 it is said:
“It is understood that the quantities given are approximate only, and that no claim shall be made against the United States on acount of any excess or deficiency, absolute or relative, in the same. * * * Bidders, or their authorized agents, are expected * * * to visit the locality of the work and to make their own estimates, etc.”
In paragraph 70 it is said:
“ Investigation. It is expected that each bidder will visit the site of the work * * * and ascertain the nature of the work, etc.”
If it were not for these cautionary provisions of the contract this case would undoubtedly come within the ruling of this court in The Atlantic Dredging Co. v. U. S. (35 Ct. Cls., 463), and which is much relied upon by the plaintiffs. In the latter case the representation was very nearly in the terms of the representation in the case at bar, and it was held to be a warranty. An examination of the contract, however, in that case shows that the representation as made was not qualified by any other provision in the contract, and *246 that the contract contained no cautionary provisions whatsoever. For that reason that case can not be regarded as an authority in this case. The condition of the backing of the dam was not peculiarly within the knowledge of the Government, but was- a subject about which the plaintiffs had equal means of informing themselves, and they had been warned so to do.
Without any further discussion of this question we will simply add that we think this case comes within the decisions of this court in the following cases, Simpson v. U. S. (31 Ct. Cls., 217), affirmed 172 U. S., 372; Lewman v. U. S. (41 Ct. Cls., 470; Griefen v. U. S. (43 Ct. Cls., 107), and that the representation as to the condition back of the dam can not be regarded as a warranty and the items growing out of that contention are disallowed.
The last item of the plaintiff’s claim is for the recovery of the deductions which were made from the amounts found due to the plaintiffs under the contract of expenses of inspection and superintendence.
It appears from the findings that (1) the plaintiffs had two contracts with the Government for completion in 1902, one on the Kentucky River and the other the contract in question in this case, and were unable to complete both contracts within the time limit. That being the case, and desiring to push the Kentucky River contract to completion, the engineer in charge of both works granted an extension of time on the Green River work to December 31, 1903. Another extension of time was granted at the plaintiffs’ request to December 1, 1904; (2) that the work during its progress was prosecuted with due diligence; (3) that if the work had been done in the seasons of 1902 and 1903, as provided in the contract, the same expenses for inspection and superintendence would have been required; (4) that while in progress the delay in the completion of the work was caused by the extra time required to remove the cribwork found in this backing of the dam instead of the “broken stone, sawdusr, and sediment,” as represented in the specifications, and this unexpected condition caused a delay of 90 days. It also appears that the plaintiffs duly protested against the making of such deductions.
*247 That part of the contract relating to this subject is found in paragraph 5, which has the following provision:
“Should the original time limit be thus waived, all expenses for inspection and superintendence, and all other actual losses and damages to the United States due to the delay beyond the time originally set for completion shall be determined by the said party of the first part and deducted from any payments due or to become due the party of the second part.”
It is true, as before stated, that after beginning the work it was prosecuted with due diligence, and the delay after that time was caused by the finding of conditions other than were represented in the specifications; but if we adhere to the decision that this representation was not a warranty, we do not see that this fact can relieve the plaintiffs from paying the cost of inspection during such time as they were delayed on account of this unexpected condition back of the dam. The work was not begun in the season of 1902, through no fault of the Government, but as the plaintiffs were under two contracts, one on the Kentucky Kiver and the other the one we are considering, it desired to push to completion the Kentucky Kiver contract within the time limited rather than the latter. The conditions represented in the specifications were not warranted, and that being the case, the plaintiffs in law are presumed to engage as to the time for the completion of the work with a knowledge of the conditions as they actually existed. They agreed to finish the work by September 1, 1893, at the latest. They did not do so and must take the consequences, one of which is to pay the cost of inspection and superintendence during such time as the Government was damaged on account of such delay. Paragraph 5, above quoted, provides that “ should the original time limit be thus waived, all expenses of inspection and superintendence and all other actual losses and damage to the United States due to the delay, etc., shall be deducted, etc.” If there had been no delay in the work, and consequently no extension of time allowed for the completion of the contract, the Government would have been under the necessity of providing for inspection and superintendence during such timely prosecution of the work, *248 which the findings show to have been 60 days. It therefore follows that the Government was only damaged by the cost of inspection and superintendence for the period of delay, which was 90 days, and no longer, and deduction to that extent should have been made and no more. This would make the sum of $320 unjustly deducted, as shown by Finding VII.
Judgment is therefore ordered for the plaintiffs under Findings III and VII in the sum of $796.63, and the petition as to the several items set forth in the other findings dismissed.