BENSON, APPELLEE, *v.* DORGER, APPELLANT.

[Cite as Benson v. Dorger (1972), 33 Ohio App. 2d 110.]

(No. 11690—Decided April 24, 1972.)

*Mr. Edward Benson,* for appellee.
*Mr. Cedric Vogel,* for appellant.

HOLMES, J. This matter involves an appeal from a judgment of the Common Pleas Court of Hamilton County which awarded a judgment to the plaintiff, the appellee herein, for the sum of $2,069.89 as damages for the negligent construction of a dwelling.

The facts, in brief, are as follows. On May 14, 1956, the plaintiff entered into a written agreement with the defendant, the appellant, for the purchase of a house and lot located in Cincinnati, Ohio, which house was then under construction. The real estate purchase contract was very brief in nature and was a standard copyrighted form of the Cincinnati Real Estate Board in use at that time.

On June 19, 1956, the plaintiff paid the purchase price for the dwelling, the defendant delivered the deed therefor, and the plaintiff took possession, all of the construction work having been completed.

During the first year after moving into the new dwelling, the plaintiff began noticing certain defects in the house, such as cracking plaster and cement floors, a separation of the back steps from the house, a settling of the founda-

tion, and difficulty in opening the garage door due to the foundation and floor settling.

A series of complaints to the defendant builder-contractor followed and there appeared to be a number of attempts to rectify the apparent problems. Such attempts were not satisfactory to the plaintiff, and on May 11, 1962, some six years after signing the contract, she brought this action against the defendant.

The amended petition sets forth two causes of action. The first sounds in fraud, to the effect that the plaintiff had been induced to sign the contract of sale by fraudulent representations of the defendant as to the method of construction of the house and the materials used therein, and the second sounds in negligence and implied warranty. The petition states that the house was constructed in so "unskillful and negligent" a manner as to cause a cracking of the garage floor and walls requiring the employment of a contractor to remedy the defective workmanship and the replacement of defective materials, all of such labor and materials, costing $2,069.89.

Further the petition alleged "that by reason of the fraud and deceit practiced upon the plaintiff by defendant, and by reason of the breach of contract and implied warranty of the defendant," plaintiff was damaged in the sum of $11,069.89, for which sum the plaintiff prayed, together with punitive damages in the amount of $22,139.78.

This matter was tried to the court which found no actual fraud on the part of the defendant and dismissed the first cause of action. Further, the trial court found for the plaintiff on the second cause of action.

The defendant sets forth three assignments of error which, in essence, are that the trial court erred in overruling the defendant's motion for judgment at the close of plaintiff's evidence, and at the close of defendant's evidence; that the judgment is against the manifest weight of the evidence and contrary to law; and, the catch-all allegation, "other apparent errors on the face of the record."

Although this presents a hard case with what may appear to be unequitable results, we must, in accordance

with the law as set forth by the highest court of this state, reverse the judgment of the Hamilton County Court of Common Pleas.

After reviewing the transcript of proceedings, we come to the conclusion that the trial court quite correctly ruled out the element of fraud as being present in this case. From the testimony of the plaintiff, it appears that there were no representations of any kind made to her by the defendant or its agents concerning the manner of the construction of the dwelling, or concerning the value of such building.

Also, we find no evidence of concealment on the part of the defendant as to the quality or condition of the structure.

The element of fraud being ruled out of the case, such matter proceeded upon the plaintiff's second cause of action pertaining to the allegations of negligence and claimed implied warranty.

We believe that the basic questions presented here are as follows: (1) Does the law imply any warranties as between a builder-vendor and the vendee of a completed structure and (2) what duty of performance, if any, is imposed by law upon such a builder-vendor?

As to the question of implied warranties involved in a sale and purchase of a completed house, we find a number of cases and statements of the law in point.

In the first paragraph of the syllabus of *Shapiro* v. *Kornicks* (1955), 103 Ohio App. 49, we note the following:

"1. In the absence of an express warranty, the vendor of residence property, sold under a written agreement, is not liable to the purchaser for damages because of defects in the house claimed to have developed after the purchaser came into possession, unless the vendor was guilty of fraud in failing to make disclosure of known latent defects or in making fraudulent representations."

In *Rappich* v. *Altermatt* (1957), 106 Ohio App. 282, the Franklin County Court of Appeals, in rejecting the theory of implied warranty in the sale of a completed real estate structure, held as follows in the syllabus:

"A petition alleging that the plaintiff purchased from the defendant a completed house containing certain defective structural conditions which plaintiff repaired to his damage upon refusal of defendant to do so and which petition contains no allegation of fraud, representations, or concealment of facts as to the condition of the house by the defendant fails to state a cause of action and is demurrrable."

It is noteworthy within the framework of both queries as to implied warranty and as to the duty of a contractor, to refer to the case of *Mitchem* v. *Johnson* (1966), 7 Ohio St. 2d 66.

Although the facts in such case involved an uncompleted structure, the syllabus law is enlightening as such relates to this matter.

The second and third paragraphs of the syllabus of *Mitchem* v. *Johnson* are as follows:

"2. An implied warranty in favor of the vendee of an uncompleted real-property structure that it will, when finished, be suitable for the purpose intended will not be imposed upon the vendor who constructed it and undertakes to complete it as a part of the executed contract for sale of the real estate.

"3. A duty is imposed by law upon a builder-vendor of a real-property structure to construct the same in a workmanlike manner and to employ such care and skill in the choice of materials and work as will be commensurate with the gravity of the risk involved in protecting the structure against faults and hazards, including those inherent in its site. If the violation of that duty proximately causes a defect hidden from revelation by an inspection reasonably available to the vendee, the vendor is answerable to the vendee for the resulting damages."

As to implied warranties, in the sale of a completed structure, the court spoke as follows, at page 70 of the opinion:

"In the absence of express warranties, the overwhelming weight of authority is that *caveat emptor* controls the purchase and sale of a *completed* structure, and the vendor

will not be strictly liable to the vendee on an implied warranty that the structure is fit or suitable for the purpose ordinarily intended, even though the vendor was responsible for its construction.''

There being no express warranties made by the vendor in the contract of sale or otherwise, we hold that there may be no implied warranties as applied to the transaction between these parties.

The court, in *Mitchem*, clearly establishes the duty of the builder in the performance of his work to be that of a workmanlike performance. Similarly, the law as set forth in *Flannery* v. *St. Louis Architectural Iron Co.*, 194 Mo. App. 555, is quoted by Justice Schneider at page 69 of the *Mitchem* opinion, as follows:

" 'It is the duty of the builder to perform his work in a workmanlike manner; that is, the work should be done as a skilled workman would do it; the law exacting from a builder ordinary care and skill only.' [6 Cyc. 59.] It is certain that the builder is not an insurer. Nor is he required to respond to the owner on account of defective construction, except in accordance with the precepts of ordinary care, unless the obligation is affixed upon him through a special contract to do so.

"Here, it is conceded there was no special contract requiring plaintiff to mend the roof in any event or make good any other part of the building which should fail because of latent defects in material not discoverable through exercising ordinary care to that end. Of course, there is no absolute warranty implied by law against the builder, for the measure of his duty, as above stated, is to be ascertained by reference to the standard of ordinary care and skill in the circumstances which beset the particular situation.''

We hold that the duty owed by this defendant to the plaintiff is that he perform his work in a workmanlike manner, or, in other words, as a skilled workman would do it. Such a duty entails the use of ordinary care in the carrying out of his contractor duties.

The improper performance of a duty to execute the

work of construction of such a residence gives rise to an action for damages for the acts performed by the contractor. Such an action sounds in negligence.

In the matter before us, the plaintiff sets forth in her petition a claim based upon negligence, which alleged negligence would control the form of the action even though the matter between the parties grew out of the original real estate purchase contract.

The allegation as contained in the second cause of action within the petition, aside from the allegation of implied warranty, was to the effect that the defendant had negligently constructed such house. This, then, categorizes this case as one *ex delicto*.

The defendant claims that inasmuch as this is a tort action sounding in negligence, such must be governed by the statute of limitations, as set forth in R. C. 2305.09, which provides that such actions must be brought within four years after the cause of action accrued.

With the latter proposition of the defendant, we must agree. The language of the syllabus in *Mitchem* contains words generally associated with actions sounding in negligence.

Paragraph three of that syllabus speaks of the duty imposed upon a builder-vendor of a real property structure to construct the same in a "workmanlike manner," and "to employ such care and skill," etc. Also, "if the violation of that duty proximately causes a defect * * * the vendor is answerable to the vendee for the resulting damages."

We hold that the four-year statute of limitations as found within R. C. 2305.09 is applicable to the facts found within the present case.

We are not required to launch into a full discussion of when such statute of limitations begins to run; *i. e.*, at the time of the acceptance of the building, or at a later date when a latent defect might have been discovered. Suffice it to say that where there is fraud, any cause of action would not accrue until such fraud is discovered. R. C. 2305.09.

As previously stated, we feel that the trial court correctly ruled fraud out of this case.

In the instant matter, there was testimony by the plaintiff vendee that she had, within the first year of the purchase of this residence, noticed certain defects in the house such as the floor separation in her daughter's bedroom and cracking within the walls and ceilings. Well within the four-year period, as determined to be the appropriate limitation of action for such a cause, the vendee had actual notice of the poor workmanship and faults involved in such structure. Parenthetically, we will note that a reading of the record readily evidences the fact that the defendant had performed his work in anything but a workmanlike manner.

As stated previously, such a result makes for a harsh case. However, we are bound to follow the law as we feel it has been spelled out for us in *Mitchem* v. *Johnson*.

Therefore, the judgment of the trial court is hereby reversed and final judgment is hereby entered for the defendant.

*Judgment reversed.*

JONES and HOFSTETTER, JJ., concur.

HOLMES, J., of the Tenth Appellate District, and JONES and HOFSTETTER, JJ., of the Eleventh Appellate District, sitting by designation in the First Appellate District.