This case is before the court on plaintiffs and defendant’s cross-motions for summary judgment. After careful consideration of the parties’ submissions, and after hearing oral argument of counsel, we allow the defendant’s motion and deny the plaintiffs.
On June 1, 1979, the United States Department of Housing and Urban Development (HUD) issued an invitation for bid (IFB) on an apartment complex, the Mill Road Apartments. Income Property Associates, whose sole general partner Peter Craig Mortenson is the plaintiff, responded with a bid of $800,000 which was accepted. A contract was executed on July 18, 1979, and a $40,000 deposit made as required by the contract. Prior to closing, plaintiff held a meeting with a HUD attorney and requested that Income Property Associates be let out of the contract since there had been difficulty with financing. The Government refused because the next highest bid was $200,000 less than that of Income Property Associates. The plaintiff refused to close the transaction. He has brought suit in this court to *535 recover the $40,000 deposit, $8,000 in expenses incurred with respect to the property, and $114,000 representing the profit Income Property Associates would have made. The grounds for suit are defendant’s alleged misrepresentations with respect to the rentals charged and alleged failure to disclose the defective storm drainage system.
The IFB stated that 36 of the apartments at Mill Road rented for $240 and 12 at $250. In June, at the time the IFB was distributed, the apartments actually rented for only $235. However, by August, prior to the closing date of September 17, 1979, the rentals were at the levels stated in the IFB. The IFB in large capital letters said, "project BOOKS AND RECORDS WILL BE AVAILABLE FOR INSPECTION BY PROSPECTIVE BIDDERS AT THE PROJECT MANAGER’S OFFICE.” The books correctly disclosed the rentals in June as being $235. Mr. Mortenson, however, did not examine the books.
The IFB did not warrant the physical condition of the property. Nor did it warrant the accuracy of the information provided. It said:
GENERAL INFORMATION
Purchaser will be required to accept the property WITHOUT WARRANTY AS TO PHYSICAL CONDITION.
Title to all equipment and chattels owned and used by the Secretary in the operation of the property will pass to the purchaser, but WITHOUT WARRANTY AS TO PRECISE COUNT AND CONDITION.
While care has been exercised to assure accuracy, all information provided is solely for the purpose of permitting parties to determine whether or not the property is of such type and general character as might interest them in its purchase, AND HUD MAKES NO WARRANTY AS TO THE ACCURACY OF SUCH INFORMATION. Those interested are expected to acquaint themselves with the property, and to arrive at their own conclusions as to physical condition, number and occupancy of revenue producing units, estimates of operating costs, and any factors bearing upon valuation of the property.
*536 INSPECTION OF PROPERTY
Prospective bidders are urged and invited to inspect the property. Inspections may be arranged * * *
Shortly after HUD had acquired the property in the winter of 1978, it became aware that the parking lot would flood during heavy rainfalls due to the inadequate capacity of the storm drainage system. HUD representatives met with representatives of the County Drain Commission to discuss the problem. The County Drain Commission recommended the problem be solved by building a relief storm drain. HUD authorized the county to build one and agreed to pay the $3,374.40 it cost. To entirely replace the drainage system would have cost $50,000 to $100,000 and required a petition and the township would have had to contribute the portion of the cost attributed to health, welfare, and convenience. The relief drain that was installed is capable of handling all but extremely excessive rainfalls which statistically occur approximately once every 10 years. To date there have been no complaints of flooding.
The plaintiffs agents did inspect the property. Plaintiff alleges the inspection did not reveal the problem with the drainage system. Defendant, however, claims there were depressions in the asphalt surface created by the inadequate drainage that should have revealed the problem.
Income Property Associates is a domiciliary of Colorado, as is Peter Mortenson, its sole general partner. Under Colorado law, Peter Mortenson may sue without joining the partnership or the remaining partners. Monks v. Hemphill, 121 Colo. 1, 212 P. 2d 1004 (1949). The Anti-Assignment Act, 31 U.S.C. § 203 and 41 U.S.C. § 15, is inapplicable to this case since Peter Mortenson was the only general partner of Income Property Associates and had sole control of it. Hobbs v. McLean, 117 U. S. 567 (1886); Hollerbach v. United States, 47 Ct. Cl. 236, 242-243 (1912), rev’d on other grounds, 233 U. S. 165 (1914). Thus Peter Mortenson is a proper party in interest and has the capacity to bring suit.
Plaintiff contends that defendant’s alleged misrepresentation with respect to the rentals is such that he should be allowed to rescind the contract for fraud. We reject this. *537 The rentals were at the level represented by the IFB before the closing date, September 17, 1979. Thus at the time plaintiff would have taken possession of the property, the rents received were as defendant had represented. Further, HUD had specifically disclaimed in the IFB the accuracy of the information contained therein. Lastly, although plaintiff chose not to inspect the books, they were available for inspection. For all these reasons, we hold this was not a misrepresentation that would entitle the plaintiff to rescind the contract.
Plaintiff also argues that defendant’s failure to disclose the problem with the storm drainage system constitutes fraud sufficient to void the contract.[1] There is a conflict as to whether or not inspection could have disclosed the defect. We need not, however, determine this. Most courts apply the doctrine of caveat emptor to real estate transactions. See, e.g., Century Display Manufacturing Corp. v. D. R. Wager Construction Co., 46 Ill. App. 3d 643, 360 N.E.2d 1346 (1977); Benson v. Dorger, 33 Ohio App. 2d 110, 292 N.E.2d 919 (1972); Little v. Merck, 124 Ga. App. 73, 183 S.E.2d 234 (1971); Allen v. Wilkinson, 250 Md. 395, 243 A.2d 515 (1968). Under this doctrine the vendor does not impliedly warrant the condition of the premises. Id. We have been unable to find any jurisdiction which has not applied this doctrine with respect to a sale of used commercial property. In this case the IFB itself specifically disclaimed in clear language and in large print that it did not warrant the condition of the property.[2] As we said in Baker v. United States, 220 Ct.Cl. 657, 660 (1979), with regard to the same disclaimer:
* * * The prospectus clearly emphasized that the bidders were invited and urged to inspect the property, and ample warning was given that there was no warranty as to the physical condition of the property or as to the *538 precise count and condition of the rental units. Bidders were also warned that HUD did not warrant the accuracy of the information furnished in the prospectus and that bidders were expected to arrive at their own conclusions as to the physical condition, as well as the number and occupancy of revenue producing units. * * *
The defect in the property is minor. With the relief drain installed, the property may only flood once in 10 years and has not yet flooded. There is no unreasonable danger posed by this to those on the premises. Under all of these circumstances, we hold that the defendant did not have an obligation to disclose such a minor defect. Its failure to do so does not entitle the plaintiff to void the contract.
it is therefore ordered that defendant’s motion for summary judgment be and is hereby allowed. Plaintiffs motion for summary judgment is hereby denied. The petition is hereby dismissed.

 It should be noted that defendant’s representative has sworn in his affidavit that he routinely informed prospective bidders of the drainage problems and that he believes he told Mr. Mortenson about them. Plaintiff, however, in his affidavit swears he was never told of the defects in the storm drainage system. For purposes of this motion, we assume plaintiff was never told of the defect.

 Rash v. United States, 175 Ct. Cl. 797, 360 F. 2d 940 (1966), does not support plaintiff in his position that the disclaimers were not binding. In Rash both parties made a mutual mistake. The land sold was actually substantially smaller than both parties had thought. There is no mutual mistake present here. The state court cases cited by the plaintiff are also inapposite. State law does not govern federal contracts. Keydata Corp. v. United States, 205 Ct. Cl. 467, 480, 504 F. 2d 1115, 1122 (1974).