Joseph W. MORRIS and 1120–24 Industrial Partnership, Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 92–590C.

United States Court of Federal Claims.

July 28, 1995.

Elaine K. Morris, Arlington, VA, attorney of record for plaintiffs.

Domenique Kirchner, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

### INTRODUCTION

Plaintiff, Joseph W. Morris, was the high bidder at an auction of surplus government real estate. As a result of his successful bid, Mr. Morris entered into a written contract with defendant to purchase a commercial property, comprised of a "garage/warehouse building" located in the District of Columbia, from the United States Small Business Administration (SBA). Pursuant to this purchase contract, the property was eventually conveyed by quitclaim deed from the SBA to 1120–24 Industrial Partnership, a Virginia General Partnership in which Mr. Morris is a general partner. 1120–24 Industrial Partnership is also a plaintiff herein. Plaintiffs have brought this action for breach of contract alleging, *inter alia*, misrepresentation by defendant prior to the forming of the contract and violation of the implied obligation of good faith and fair dealing between the time of contract formation and the eventual settlement.

The initial Complaint was filed in the United States Court of Federal Claims[1] on August 31, 1992. In response, defendant moved to dismiss the complaint on December 7, 1992. Plaintiffs thereafter filed an Amended Complaint[2] (hereinafter "complaint") on March 19, 1993. The government also filed a motion to dismiss the amended complaint, along with a motion for summary judgment, on October 18, 1993. Finally, plaintiffs have filed a cross-motion for summary judgment as well. As a consequence, the court now has before it—defendant's motion to dismiss for lack of subject matter jurisdiction (pursuant to RCFC 12(b)(1)), defendant's motion to dismiss for failure to state a claim upon which relief can be granted (pursuant to RCFC 12(b)(4)), as well as the parties' cross-motions for summary judgment (pursuant to RCFC 56). Each of these pending motions is analyzed and resolved, *infra.*

As is more fully explicated below, this court concludes, upon a careful review of the pleadings, briefs, and the evidentiary record, that: (1) defendant's motion to dismiss the complaint for lack of subject matter jurisdiction must be denied as jurisdiction in the Court of Federal Claims over the complaint is proper; (2) Count I of the complaint (premised on misrepresentation, mistake of fact, and failure to disclose superior knowledge) fails to state a claim upon which relief may be granted and must, therefore, be dismissed pursuant to defendant's RCFC 12(b)(4) motion; (3) defendant's motion to dismiss Count II for failure to state a claim must be granted in part (claim of mismanagement) and denied in part (claim of delay in closing); (4) defendant's motion to dismiss Count III should be treated as a motion for summary judgment as both parties have relied on matters outside of the pleadings; (5) plaintiff is entitled to summary judgment on Count II (delay in closing) solely on the issue of liability; and (6) neither party is entitled to summary judgment on Count III because a genuine issue of material fact exists.

---

1. At that time the court was named the U.S. Claims Court. Pursuant to the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506 (1992), the court was renamed the U.S. Court of Federal Claims shortly thereafter.

2. The first amended complaint essentially restates the allegations set forth in the original complaint, *in haec verba*, but adds a third, new count alleging a violation of the implied contract obligation of good faith and fair dealing. Therefore, for the purposes of defendant's motion to dismiss, we treat the amended complaint as completely superseding the original complaint. Consequently, the discussion, *infra*, focuses solely on the amended complaint.

## FACTS [3]

The property at the center of this contract dispute is located at 1120–24 Congress Street, N.E., Washington, D.C. Improvements on the site consist of a one-story and partial two-story "garage/warehouse building." Sometime prior to May 1990, said property had been pledged as collateral for a SBA loan to Stern Chemical Co., Inc. Richard DeFranco, president of Stern Chemical, was the owner of the Congress Street property. He was also the husband of a former SBA employee, Kathleen DeFranco.[4] When Stern Chemical defaulted on the loan, the SBA foreclosed on the property. At the public foreclosure auction, the SBA bid on and purchased the property.

Thereafter, in August of 1991, the General Services Administration (GSA), on behalf of the SBA, advertised the Congress Street property, along with another commercial property (located nearby at 2040 West Virginia Ave., N.E.), for sale by public auction. After learning of the advertised property, Joseph Morris decided to contact the GSA for further information. Upon doing so, he was referred to Doris Rousey, an employee of the SBA. Ms. Rousey was a loan specialist in the Portfolio Management Branch of the Finance and Investment Division in the Washington District Office of the SBA. She was responsible for liquidating the Congress Street property in addition to preserving and protecting the collateral. In response to his request, Mr. Morris obtained an Invitation to Bid Package from Ms. Rousey.

Included in the Bid Package was a brief, informative section entitled "Property Data" containing a description of the property as well as other relevant information. According to this supplemental information section, the property was leased by oral agreement to a tenant who paid the SBA $1,000 per month rent and used the ground floor as an automobile repair garage. This description further disclosed that several artists were using the second floor as a studio and paying $500 per month to the operator of the garage. Finally, the Property Data section advised prospective bidders that the primary tenant "has expressed an interest in continuing to rent the space." (Am.Complaint Exh. A at 4).

Sometime before the auction was to be held, Mr. Morris inspected the property, observing the auto repair business on the ground floor. Mr. Morris also noticed that the artist-subtenants were using their studio as a residence in violation of local zoning regulations. Shortly thereafter, he telephoned Ms. Rousey to seek additional information about the ground floor tenant. She informed Mr. Morris that the tenant's name was Hopeton Anderson and that he had been doing business in that location, i.e., on the property, for approximately eight years. Further, Mr. Morris inquired of Ms. Rousey whether the tenant was reliable, had a prompt payment record, and whether he should be kept on as a tenant by a purchaser of the property. In response, Ms. Rousey stated in the affirmative to each of these questions.[5] Finally, Mr. Morris told Ms. Rousey that the upstairs subtenants were residing on the property in violation of zoning regulations. She agreed to correct this violation if Mr. Morris purchased the property.

Plaintiff Mr. Morris later applied for and received an offer of 75% financing on the property in question from the SBA in the event that he was the high bidder at auction. The auction was held on August 22, 1991, and Mr. Morris succeeded in becoming the high bidder, with a bid of $195,000. That same day, Ms. Rousey sent a letter to Mr. Morris confirming the government's acceptance of his bid and informing him that the tenant, Mr. Anderson, had been asked to have the upstairs subtenants vacate the premises.

---

3. The facts set forth herein are taken from the complaint, the affidavits, and the documentary evidence in the record. Unless otherwise noted, the parties are in basic agreement as to the general unfolding of these occurrences.

4. Although it is not clear from the record exactly when Mrs. DeFranco was employed by the SBA, it appears that she was no longer employed there at the time of the foreclosure or subsequent sale of the property.

5. Defendant disputes this account (and perhaps the occurrence) of the conversation. In fact, Ms. Rousey denies that Mr. Morris made any inquiries concerning the quality of the tenant, Hopeton Anderson.

Later, on August 29, Ms. Rousey wrote to Mr. Anderson, at Mr. Morris' request, asking him to vacate the premises by September 30. However, Mr. Anderson was told that he would be allowed to remain on the property provided the upstairs subtenants were removed. Settlement was scheduled to be completed by September 6, 1991.

Pursuant to the "General Terms of Sale" contained in the Bid Package, the government's acceptance of Mr. Morris' bid formed a binding agreement for the sale of the property between plaintiff and the government. The written contract included the following documents—(i) the "Instructions to Bidders," (ii) the "General Terms of Sale," (iii) the "Special Terms of Sale," (iv) the provisions of the "Bid Form" filled out by plaintiff, and (v) a sheet of "Corrections" (collectively "the contract"). However, the Property Data materials, wherein bidders were informed about the tenant, as described *supra*, were not included as part of the contract.

The contract contained several provisions of note. First, closing was to occur within 15 days of the government's acceptance of the bid. Second, the Instructions to Bidders provided that the GSA would "answer requests for additional information concerning the property offered to facilitate preparation of bids." (Am. Complaint Exh. A at 10, ¶ 5). Third, under the contract, "no oral representations made by, or for, or on behalf of either party shall be part of such contract ... without the consent of the Government...." (*Id.* at 7, ¶ 13). Fourth, the General Terms of sale provided further that "any error or omission [in the property descriptions set forth in the Bid Package] ... shall not constitute ground or reason for nonperformance of the contract of sale, or claim by purchaser for allowance, refund, or deduction from the purchase price." (*Id.*, ¶ 2). Lastly, the property was sold " 'as is' and 'where is' without representation, warranty, or guaranty...." (*Id.*, ¶ 3).

In order to proceed with settlement as required under the contract, Mr. Morris contacted Congressional Title and Escrow Co.,

Inc. to serve as his settlement agent. After searching title, Congressional discovered several tax liens on the property. Furthermore, Mr. Morris was informed that Congressional could not proceed with settlement unless the liens were paid or released. After some period of dispute as to the obligations of the parties with respect to these liens, the SBA succeeded in obtaining the release of the tax liens on the property. Finally, the closing of the sale of the Congress Street property took place on November 25, 1991.

At the settlement, Mr. Morris asked that the tenant's November rent be prorated between the buyer and the seller. Ms. Rousey responded that Mr. Anderson had not paid rent in November and was apparently concerned that he might have to leave the premises once the new owners took over. After Mr. Morris insisted on being compensated, Ms. Rousey offered him a $2,000 credit on the purchase price of the property, which he accepted.[6] The parties then settled and closed the sale, and the property was conveyed by quitclaim deed to 1120–24 Industrial Partnership, a Virginia General Partnership in which Mr. Morris was a general partner. In addition, at the closing, Mr. Morris also requested that Ms. Rousey furnish him with Mr. Anderson's payment record. The next day, on November 26, Ms. Rousey sent the payment record to the plaintiffs. This document revealed that Mr. Anderson had *not* paid rent for any month since July 1991, but was fully paid up through that month.

When Mr. Morris confronted Mr. Anderson with this information, he discovered that Mr. Anderson had been subletting two-thirds of the ground floor garage space to Tony Campbell, who was operating the automobile repair business in the larger garage at 1124 Congress, while Mr. Anderson operated the auto body business in the smaller garage at 1120 Congress. Mr. Campbell revealed that he had been paying rent to Mr. Anderson on a regular basis. However, in the preceding months, he had become suspicious that Mr. Anderson had

---

**6.** It is uncertain from the record whether this credit was compensation for delinquent rent or for the costs of evicting the tenant.

stopped paying rent to the government. Fearful that he might be evicted, Mr. Campbell leased new garage space next door at 1116 Congress and left his former location at 1124 Congress (on the property) at the end of November 1991.

After giving Mr. Anderson an opportunity to pay the rent, plaintiffs brought an action against him in the Landlord and Tenant Court of the District of Columbia. Mr. Anderson finally left owing rent. Plaintiffs had signs made, advertised the property, contacted real estate brokers, and showed the property to prospective tenants. Unfortunately, they were unable to find a tenant for the property. Suit was filed in this court on August 31, 1992.

By their complaint, plaintiffs are seeking rescission of the purchase contract and restitution of the purchase price or, in the alternative, compensatory damages. Plaintiffs premise their entitlement to such relief on defendant's alleged misrepresentation of Mr. Anderson's payment record prior to the auction (Count I) and on defendant's alleged breach of good faith in failing to reveal and concealing, until after closing, Mr. Anderson's nonpayment of rent from August through November (Count III). In addition, plaintiffs seek money damages for lost rental income caused by the departure of subtenant Tony Campbell, which they allege was the result of defendant's failure to convey within the contractually-mandated time period and defendant's mismanagement of the property between the auction and closing (Count II).

## CONTENTIONS OF THE PARTIES

### 1. Defendant

Initially, defendant, the United States, moves to dismiss plaintiffs' complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). The government contends that plaintiffs' claim sounds in tort and is, therefore, beyond the ken of our Tucker Act jurisdiction, which specifically excludes claims "sounding in tort." 28 U.S.C. § 1491(a). The complaint, argues defendant, states a claim (if any) of misrepresentation, fraud, or wrongful inducement. These are torts over which, defendant continues, the

Court of Federal Claims lacks jurisdiction. Furthermore, the government maintains that any representations allegedly made by it were not contractually binding, that plaintiffs have failed to allege any breach of contract, and that the alleged harm was not causally related to any contract breach. Thus, the government posits that plaintiffs' claim cannot sound in contract. Accordingly, defendant concludes that the petition should be dismissed as it is not properly within our subject matter jurisdiction.

Secondly, defendant avers that the complaint fails to state a claim upon which relief can be granted. RCFC 12(b)(4). As to plaintiffs' Count I, charging that the government misrepresented the quality of the tenant prior to the auction, defendant alleges that the parol evidence rule bars consideration of statements made outside the written contract, that Ms. Rousey had no authority to contractually bind the government, and that any representations were not contractually binding. In addition, the government seeks the dismissal of Count II, alleging defendant's breach of the contract by delaying the settlement, because plaintiffs proceeded with the closing and because the sales agreement has been fully performed.

Finally, the government seeks summary judgment on all three counts. With respect to Count I, defendant contends that it is entitled to summary judgment on the same grounds upon which it sought dismissal for failure to state a claim, i.e., the parol evidence rule, Ms. Rousey's lack of authority to modify the purchase contract, and the absence of any breach of contract. Defendant also seeks summary judgment on Count II (alleging delay and mismanagement) because the government did not have a duty to collect rent from the tenant. Lastly, defendant argues that summary judgment is appropriate as to plaintiffs' claim of a violation of good faith and fair dealing (Count III) because plaintiffs fail to produce the well-nigh irrefragable proof required to overcome the presumption that government officials act in good faith. Thus, the government concludes that there are no genuine issues of material fact and that it is, therefore, entitled to judgment as a matter of law.

### 2. Plaintiffs

For their part, plaintiffs contend that the court possesses jurisdiction over this matter. Plaintiffs argue that they are entitled to relief under several contractual theories. Among these are—defendant's misrepresentation, mutual mistake, the doctrine of superior knowledge, as well as the implied duty of good faith and fair dealing. Because these are contract claims within the jurisdiction of the Court of Federal Claims, plaintiffs conclude that defendant's motion to dismiss for lack of subject matter jurisdiction should be denied.

Furthermore, plaintiffs maintain that they have successfully pled claims upon which relief may be granted. In Count I, charge plaintiffs, they have stated claims of misrepresentation, mistake, and failure to disclose superior knowledge based on their allegation that Ms. Rousey misrepresented the payment history of the tenant, Hopeton Anderson. Second, plaintiffs aver that Count II of their complaint states a claim for breach of contract because the government failed to convey the property within the contractually-mandated time and because, as they allege, defendant's actions between the auction and the settlement constituted mismanagement of the property. Lastly, plaintiffs allege that they have stated a claim for breach of the obligation of good faith and fair dealing. They contend that the relation between Richard DeFranco, the former owner of the property, and his wife, a former SBA employee, establishes a conflict of interest. Additionally, plaintiffs continue, the government's attempt to convey a property with tax liens on it as well as Ms. Rousey's concealment of the fact that Mr. Anderson was not paying rent constitutes bad faith on the part of the defendant. Therefore, plaintiffs propose that defendant's motion to dismiss for failure to state a claim be denied.

Lastly, plaintiffs oppose the government's motion for summary judgment and counter that they are entitled to summary judgment. In this connection, they contend that there is no genuine dispute concerning the following material facts—(i) that Ms. Rousey made erroneous representations concerning the tenant; (ii) that the government delayed in settling and failed to collect rent from the tenant; and (iii) that Ms. Rousey concealed Mr. Anderson's nonpayment of rent from plaintiffs until after closing. Based on these facts, plaintiffs argue that they are entitled to judgment as a matter of law on all counts of the complaint. Accordingly, plaintiffs ask the court to deny defendant's motion and enter summary judgment in their favor on all three counts.

## DISCUSSION

Four distinct motions are, in essence, now before the court. They are—defendant's motion to dismiss for lack of subject matter jurisdiction, defendant's motion to dismiss for failure to state a claim upon which relief can be granted, defendant's motion for summary judgment, and plaintiff's cross-motion for summary judgment.

In considering this matter as it is presently postured before the court, we must confront the following three broad issues in order to properly resolve these motions—

1. Is there any jurisdictional basis upon which the court may hear the merits of plaintiffs' case?

2. Given a jurisdictional basis to entertain the action, does the complaint state a claim upon which relief can be granted? and

3. If any claim is properly stated in the complaint, is either party entitled to summary judgment thereon?

Accordingly, we now turn to address the preceding questions, taking them in their logical order.

### 1. Jurisdiction (RCFC 12(b)(1))

■■■ When reviewing a motion to dismiss for lack of subject matter jurisdiction under RCFC 12(b)(1),[7] the facts as alleged in the complaint must be construed favorably to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). To this end, the court must presume all of the factual allegations to be true and

---

7. Rule 12(b) provides, in pertinent part, that "the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter...."

correct. *Reynolds v. Army and Air Force Exchange Service*, 846 F.2d 746, 747 (Fed. Cir.1988). However, a plaintiff bears the burden of establishing the court's jurisdiction over the complaint by a preponderance of the evidence. *Id.* Therefore, if a defendant mounts a factual challenge to the facts upon which jurisdiction is premised the plaintiff may lose the benefit of the foregoing presumption of truth. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189, 56 S.Ct. 780, 785, 80 L.Ed. 1135 (1936). In such a situation, the court may look outside the complaint and receive evidence for the purpose of resolving the jurisdictional issue of fact. *Maniere v. United States*, 31 Fed.Cl. 410, 413–14 (1994); *Catellus Development Corp. v. United States*, 31 Fed.Cl. 399, 405 (1994). Otherwise, in the absence of a factual challenge, our analysis is confined to the complaint.

In the instant case, plaintiffs premise jurisdiction on the Tucker Act. 28 U.S.C. § 1491. Our primary grant of jurisdiction, the Tucker Act, vests the Court of Federal Claims with—

> ... jurisdiction to render judgment upon any claim against the United States founded ... upon any express or implied contract with the United States, or for liquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1) (Supp. V 1993). Thus, the court may entertain *contract* claims against the government. However, "Congress has always withheld from this court and from the Tucker Act original jurisdiction over *tort* claims against the [g]overnment." *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1010, 178 Ct.Cl. 599 (1967) (emphasis added).

In this connection, defendant charges that this court lacks subject matter jurisdiction over this action because it is, in substance, a tort claim for misrepresentation. In *Somali Development Bank v. United States*, 508 F.2d 817, 821, 205 Ct.Cl. 741 (1974), the Court of Claims held that—"claims based on negligent misrepresentation [or] wrongful inducement ... are claims sounding in tort." Accordingly, if plaintiffs' complaint sounds in

tort, then we are without jurisdiction to hear this suit, and the petition must be dismissed.

■ Notwithstanding our general lack of jurisdiction over tort claims, however, jurisdiction in the Court of Federal Claims is proper over claims of "tortious breach" of contract. *L'Enfant Plaza Properties v. United States*, 645 F.2d 886, 892, 227 Ct.Cl. 1 (1981); *Summit Contractors, Inc. v. United States*, 22 Cl.Ct. 54, 56 (1990) ("[T]he court has repeatedly asserted jurisdiction over claims based on 'tortious breach' of a government contract."). Under this theory of jurisdiction, it is not enough that a plaintiff has alleged an independent tort related to a contract. Rather, there must be a nexus between the alleged tortious conduct and some alleged contractual obligation(s). *Id.* Where a valid contract is alleged, "the fact that the alleged breach is also tortious does not foreclose Tucker Act jurisdiction." *Wood v. United States*, 961 F.2d 195, 198 (Fed.Cir. 1992) (citation omitted). *See also Burtt v. United States*, 176 Ct.Cl. 310, 314, 1966 WL 8878 (1966). In other words, a "claim is not barred simply because it might also be stated as a tort." *Olin Jones Sand Co. v. United States*, 225 Ct.Cl. 741, 745, 1980 WL 13211 (1980).

■ Here at bar, defendant does not deny the existence of a contract between it and plaintiff Mr. Morris. Therefore, we must examine the complaint for any allegation(s) of a breach of a contractual obligation, notwithstanding any tort elements that might also be present in the allegations. Such an examination reveals that plaintiffs have alleged several violations of contractually-imposed duties. Plaintiffs contend that they are entitled to relief, *inter alia*, under the following contractual theories: (1) the oral misrepresentations made by Ms. Rousey make the contract voidable; (2) defendant's failure to disclose superior knowledge; (3) mutual or unilateral mistake of material fact; (4) defendant's failure to convey within the required time; and (5) defendant's breach of the implied obligation of good faith and fair dealing. Thus, it would appear that jurisdiction is appropriate under the Tucker Act as plaintiffs are suing for various alleged

breaches of contract and for rescission of the contract.[8]

In response to the foregoing, defendant maintains that plaintiffs' supposed contract claims lack merit and that, in reality, this is a tort case over which the court cannot assume jurisdiction. However, we could not decide whether or not plaintiffs' contract claims had any merit without first assuming jurisdiction. In this context, "jurisdiction" means the power or authority of a court to "hear and decide" the merits of a case. *See Spruill v. Merit Systems Protection Bd.*, 978 F.2d 679, 686 (Fed.Cir.1992). The Supreme Court, per Justice Jackson, has commented:

> [W]here jurisdiction depends on subject matter, the question whether jurisdiction exists [may become] confused with the question whether the complaint states a cause of action.... To determine whether that claim is well founded, the [court] must take jurisdiction, whether its ultimate resolution is to be in the affirmative or the negative.

*Montana–Dakota Utilities Co. v. Northwestern Public Service Co.*, 341 U.S. 246, 249, 71 S.Ct. 692, 694, 95 L.Ed. 912 (1951).

▮▮▮ Put differently, "[j]urisdiction, therefore, is not defeated ... by the possibility that the averments might fail to state a cause of action on which petitioners could actually recover...." *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). Rather, "well-pleaded allegations in the complaint" are generally all that is required to withstand a Rule 12(b)(1) challenge to jurisdiction. *Spruill*, 978 F.2d at 686; *Janowsky v. United States*, 31 Fed.Cl. 520, 521 (1994). In the case now before us, plaintiffs have clearly alleged contract claims in each of the counts within the complaint, as discussed *supra*. Following the guidance of the Court of Appeals for the Federal Circuit, the court should assume jurisdiction and address the merits where, as here, defendant disputes the merits of plaintiffs' claims in a Rule 12(b)(1) motion. *Id.* Accordingly, we con-

clude, and so hold, that this court has jurisdiction over plaintiffs' complaint. Therefore, we now proceed to consider defendant's motion to dismiss for failure to state a claim.

*2. Failure to State a Claim (RCFC 12(b)(4))*

▮▮▮ Next, defendant has moved to dismiss the complaint for "failure to state a claim upon which relief can be granted." RCFC 12(b)(4). In considering such a motion, the scope of our inquiry is confined to the facts alleged in the complaint, which we presume to be true and correct. *Reynolds*, 846 F.2d at 747. At this point and in this posture, our goal is not to resolve "whether [ ] plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686. Therefore, the petition should be dismissed pursuant to Rule 12(b)(4) *only if* no set of facts alleged in the complaint would, if proved, entitle plaintiffs to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Mostowy v. United States*, 966 F.2d 668, 672 (Fed.Cir.1992).

Given the foregoing, then, the appropriate and proper resolution of defendant's motion naturally demands a comprehensive examination of the complaint. As we conduct this analysis below, we are mindful of our obligation to construe the factual allegations in the light most favorable to the plaintiffs. *Scheuer*, 416 U.S. at 236, 94 S.Ct. at 1686. Thus, we now must look to each of the three counts set forth in the complaint in order to determine whether the allegations contained therein would, if proved, entitle plaintiffs to relief on any theory within our jurisdiction (*i.e.*, contract, not tort).

*a. Count I*

By the "First Claim for Relief," plaintiffs seek rescission of the contract and restitution of the purchase price plus expenses or, in the alternative, compensatory damages. Plain-

---

**8.** At this juncture we note that the complaint also contains allegations unrelated to any contract obligations. For instance, in Count II, plaintiffs charge that defendant *mismanaged* the property. However, they fail to point to any contractual duty which was allegedly breached. Therefore, to the extent that the plaintiffs have alleged additional non-contract claims, this court cannot assume jurisdiction thereof as they would sound in tort, if at all.

tiffs premise entitlement to this relief on their allegations that Ms. Rousey erroneously represented to Mr. Morris that the tenant, Mr. Anderson, had a prompt payment record and that Mr. Morris relied on and was induced by these statements to purchase the property. In support of their claim, plaintiffs assert several legal theories that would, they contend, entitle them to their requested relief on these facts—(i) misrepresentation by defendant, (ii) mistake as to a material fact, and (iii) defendant's failure to disclose superior knowledge. We now turn to address plaintiffs' proffered legal grounds for recovery.

### i. Misrepresentation

■ While the Court of Claims has held that claims of negligent misrepresentation or wrongful inducement sound in tort, *Somali,* 508 F.2d at 821, it is equally clear from the precedent of our predecessor court that, where there is privity of contract, misrepresentation has a contract aspect in addition to its tort aspect. *Florida Keys Aqueduct Authority v. United States,* 231 Ct.Cl. 911, 912, 1982 WL 25805 (1982). *See also* Restatement (2d) of Contracts §§ 159–173 (introductory note) (hereinafter "Restatement"). In its contract aspect, a claim of misrepresentation is in large measure analogous to a claim for breach of warranty.[9] For example, in *Gregory Lumber Co., v. United States,* 9 Cl.Ct. 503, 525–27 (1986), the Claims Court found that jurisdiction was proper over plaintiff's misrepresentation claim because it alleged a "tortious breach of contract" violating the contractually-created duty of "the *warranty* of quantity" (emphasis added). *See also Florida Keys,* 231 Ct.Cl. at 912 ("Plaintiff . . . is proceeding on a *warranty* theory.") (emphasis added); John Cibinic, Jr. & Ralph C. Nash, Jr., *Administration of Government Contracts* 180 (2d ed. 1985) ("*Absent express provisions,* the Government's liability [for misstatements] is based upon an *implied warranty that the information furnished is correct.*") (emphasis added).

A warranty is simply an "affirmation of fact or promise made by the seller to the buyer" concerning the property to be sold. *Black's Law Dictionary* 1423 (5th ed. 1979). In *Morrison–Knudsen Co.,* 345 F.2d 535, 170 Ct.Cl. at 718, the Claims Court, allowing recovery for defendant's misrepresentation, stated:

> The plaintiff . . . had a right to rely upon the positive representations that were made by the defendant. . . . Such positive representations amounted to a warranty, and established the predicate for a possible action for breach of contract when it was later discovered by the plaintiff that defendant's representations . . . were untrue.

(citations omitted). Therefore, binding precedent indicates that the government may be held liable when it makes erroneous representations to those with whom it enters into contractual relations. However, the government is not always held liable in these situations. Indeed, a survey of the applicable precedent reveals two distinct strands in the case law.

First, this court and our predecessor court, the Court of Claims, have often held that a government contractor is entitled to recover damages when the contractor *reasonably relies* on erroneous representations made by the government in entering into the contract. *Summit Timber Co. v. United States,* 677 F.2d 852, 230 Ct.Cl. 434 (1982); *Chris Berg, Inc. v. United States,* 404 F.2d 364, 186 Ct.Cl. 389 (1968); *Womack v. United States,* 389 F.2d 793, 182 Ct.Cl. 399 (1968). *See also Gregory Lumber Co. v. United States,* 11 Cl.Ct. 489, 503–04 (1986) (denying recovery for misrepresentation because plaintiff was *not* reasonable in relying on government estimates). For example, in *Chris Berg,* the government had misrepresented the weather conditions on an atoll where plaintiff had contracted to build a military facility. Holding that the contractor had *justifiably* relied on the government's statement, the court awarded plaintiff the extra costs sustained by

---

9. One critical distinction under the Restatement, however, is that misrepresentation makes a contract voidable but does not give rise to liability in damages, Restatement §§ 159–173 (introductory note), while breach of warranty normally impos- es liability in damages. *See, e.g., Morrison–Knudsen Co. v. United States,* 345 F.2d 535, 170 Ct.Cl. 712 (1965). Here at bar, as we noted above, plaintiffs are seeking rescission or, alternatively, compensatory damages.

it in performing the contract. 404 F.2d at 364–65. In the instant case, plaintiffs rely heavily on this line of cases.

■ However, a second strand in the case law involves facts which more closely resemble those at bar. Generally, the Court of Claims has not allowed rescission of real estate purchase contracts for alleged misrepresentation where any warranty was *expressly*. disclaimed. *Mortenson v. United States,* 229 Ct.Cl. 534, 1981 WL 22048 (1981); *Baker v. United States,* 220 Ct.Cl. 657 (1979); *Montreal Securities, Inc. v. United States,* 329 F.2d 956, 165 Ct.Cl. 120 (1964). In *Montreal Securities,* for instance, plaintiff was a purchaser at auction of surplus government real estate. In granting summary judgment for the government, the court found it significant that "the selling agency did not warrant the accuracy of any information furnished" and that bidders had been cautioned to make their own inspections. 329 F.2d at 958. In such a situation, held the court, "the buyer must look out for himself." *Id.*

Recently, this court has entertained a suit for rescission of a real estate sales contract based on a theory of misrepresentation. In *Badgley v. United States,* 31 Fed.Cl. 508 (1994), purchasers of property from the SBA alleged that the government had misrepresented the property's conformance with zoning requirements. The court applied the elements of misrepresentation as contained in the Restatement (2d) of Contracts, concluded that plaintiffs had failed to show any potential of proving their claim at trial, and, therefore, dismissed the claim. *Id.* at 514. Likewise, in addressing plaintiffs' claim here at bar, we adopt the Restatement test for misrepresentation. *See also National Rural Util. Coop. Fin. Corp. v. United States,* 14 Cl.Ct. 130, 142 (1988); *Lehner v. United*

*States,* 1 Cl.Ct. 408, 415 (1983) (both applying the Restatement test).

■ Under the rule of the Restatement, a contract is voidable when: (1) defendant made a misrepresentation; (2) the misrepresentation was either fraudulent or material; (3) the misrepresentation induced plaintiff to enter into the contract; and (4) plaintiff was justified in relying on the misrepresentation. Restatement § 164. Plaintiffs, therefore, must have alleged facts in the complaint which, if proved, would satisfy each of these elements in order to withstand defendant's motion to dismiss for failure to state a claim on this basis.

In the instant case, plaintiffs have alleged that defendant made a misrepresentation when Ms. Rousey responded affirmatively to Mr. Morris' questions about whether the tenant was reliable, had a prompt payment record, and should be kept on as a tenant. In fact, allege plaintiffs, the tenant did not have a prompt payment history and was not reliable. A misrepresentation is an assertion that is not in accord with the facts. Restatement § 159. Based on this definition, plaintiffs' allegation that Ms. Rousey affirmed that Mr. Anderson, the tenant, had a prompt payment history, when in fact he did not, is sufficient to properly allege a misrepresentation.[10]

Plaintiffs have further asserted that the misrepresentation was both material or fraudulent and an inducing cause of the contract because Mr. Morris purchased the property as an investment and was interested in properties with tenants already in place. However, even assuming that the factual allegations of the complaint were sufficient to satisfy the second and third elements, we are constrained to hold that plaintiffs have failed to state a claim of misrepresentation because, based on the facts alleged in the complaint,[11] they could not prove that

10. The alleged statements that the tenant was reliable and should be kept on are essentially assertions of opinion and judgment. As such, they may not necessarily be said to be misrepresentations of fact. Nor is reliance thereon justified. *See* Restatement § 169. Therefore, we address the alleged representation that the tenant paid rent promptly below, as this is, at least relatively speaking, factual.

11. Plaintiffs have attached a copy of the Bid Package to the complaint (Am.Complaint Exh. A). "Documents accompanying a complaint are considered part of the complaint and, thus, may be considered under" a motion to dismiss for failure to state a claim pursuant to RCFC 12(b)(4) without converting the motion into one for summary judgment. *Kinnucan v. United States,* 25 Cl.Ct. 355, 356–57, n. 1 (1992).

their reliance on the alleged statements was justified.

The plain meaning and sense of the contents of the Bid Package, which plaintiffs include in their complaint, precludes a finding of justified reliance. First, the contract provided that "any error or omission" in the written description of the property would not constitute ground or reason for a claim by the purchaser. (Am.Complaint Exh. A at 7, ¶ 2). Thus, plaintiffs were not entitled to rely on the description of the property wherein the government asserted that the property was leased by oral agreement to a tenant from month to month. (*Id.* at 4). Given that Mr. Morris could not rely justifiably on the written statement asserting the existence of the tenant, it would be incongruous if he were entitled to rely on an oral statement concerning the reliability of the very tenant upon whose existence he could not rely. Moreover, the property description expressly stated that the tenant could terminate with a mere one month's notice. (*Id.*). Thus, it was unreasonable and unjustifiable for Mr. Morris to rely on any alleged statements about Mr. Anderson when entering into the contract since Mr. Anderson could have left at any time, even before the eventual closing. Restatement § 164, comment d, explains that one is not justified in relying on a misrepresentation which relates to a fact "of only peripheral importance to the transaction." Because the tenant could depart at any time and on such short notice, we find that the misrepresentation here alleged was peripheral. Reliance thereon was, therefore, not justified.

Furthermore, this common sense understanding is borne out by the contract language, which reads in pertinent part as follows: "No oral statements or representations made by, or for, or on behalf of either party shall be a part of such contract ... without the consent of the Government...." (*Id.* at 7, ¶ 13). Additionally, the General Terms of Sale also provided that:

> The property is offered for sale and will be sold "as is" and "where is" *without representation, warranty, or guaranty* as to quantity, quality, condition, size, or kind, or that the same is in condition or fit to be used for the purpose for which intended, and no claim for any allowance or deduction upon such grounds will be considered after the auction.

(*Id.* ¶ 3) (emphasis added). In the face of this sweeping disclaimer of representation or warranty, as well as the exclusion of oral statements, it was not reasonable to rely, and Mr. Morris was unjustified in relying, on any statement about the tenant's payment history or reliability.

Plaintiffs assert that they were entitled to rely on Ms. Rousey's misrepresentation because the contract provided that the government would "answer requests for additional information concerning the property offered to facilitate preparation of bids." (Am.Complaint Exh. A at 10, ¶ 5). However, that same paragraph also states that "[e]ach bid submitted shall be deemed to have been made with full knowledge of all terms, conditions, and requirements contained in this Invitation for Bids." (*Id.*). Thus, the "additional information" provision was made subject to the other terms of the contract, most importantly the exclusion of oral representations from the contract. Furthermore, nothing in the "additional information" paragraph can be read to warrant or guarantee the information to be provided. In short, there is no conflict between these disclaimers of warranty or representation and the "additional information" clause. As a result, plaintiffs cannot establish that reliance on the alleged misrepresentation was justified by pointing to the "additional information" provision.

As in *Montreal Securities, supra,* "the selling agency did not warrant the accuracy of any information furnished...." 329 F.2d at 958; *see also Mortenson,* 229 Ct.Cl. at 535 ("Nor did it warrant the accuracy of the information provided."). In fact, as demonstrated above, the contract terms specifically disclaimed and excluded any representations or warranties. This should have put Mr. Morris, the purchaser, on notice that he was not entitled to rely on Ms. Rousey's alleged statements, specifically that Mr. Anderson paid his rent promptly.

In addition, Mr. Morris surely knew that the tenant, Mr. Anderson, was entitled to

leave with 30 days' notice, and could, therefore, have departed 30 days from the auction. Mr. Anderson might thus have vacated 15 days after Mr. Morris was to take possession (with closing scheduled within 15 days of the auction). Based upon this knowledge, Mr. Morris could not justifiably or reasonably rely on the alleged misrepresentation in contracting to purchase the property.

Accordingly, given the totality of the circumstances alleged in the complaint, plaintiffs could not prove that Mr. Morris was justified in relying on the alleged misrepresentation. We are, therefore, constrained to conclude that plaintiffs have failed to state a claim for rescission based upon misrepresentation. Moreover, for the same reasons, we also must hold that plaintiffs have failed to state a claim for compensatory damages for breach of warranty.

### ii. Mistake of Fact

■ Alternatively, plaintiffs contend that the facts alleged in Count I state a claim for rescission based on either a unilateral or mutual mistake of fact at the time of contract formation. Plaintiffs assert that Mr. Morris' belief that Mr. Anderson, the tenant, had a prompt payment history was a material mistake of fact concerning a basic assumption of the bargain. As a result, they maintain that they are, therefore, entitled to rescission of the real estate purchase contract.

■ A contract may be voidable, *i.e.,* a party may be entitled to rescission, when there has been a mutual mistake of fact or when the party seeking rescission was under a unilateral mistake of fact. *Roseburg Lumber Co. v. Madigan,* 978 F.2d 660, 665 (Fed. Cir.1992) (mutual mistake); *Meek v. United States,* 26 Cl.Ct. 1357, 1362 (1992) (unilateral mistake). To establish a *mutual* mistake of fact justifying rescission, plaintiffs must allege and prove that:

(i) the parties to the contract were mistaken in their belief regarding a fact;

(ii) that mistaken belief constituted a basic assumption underlying the contract;

(iii) the mistake had a material effect on the bargain; and

(iv) the contract did not put the risk of the mistake on the party seeking rescission.

*Dairyland Power Coop. v. United States,* 16 F.3d 1197, 1202 (Fed.Cir.1994) (citation omitted). *See also* Restatement § 152. Similarly, a *unilateral* mistake will entitle a party to a contract to rescission if that party can show:

(i) a mistake was made by the party at the time the contract was made;

(ii) the mistake concerned a basic assumption of the contract;

(iii) the mistake has a material effect on the agreed exchange of performances;

(iv) the party does not bear the risk of the mistake; and

(a) the effect of the mistake would make enforcement of the contract unconscionable, *or*

(b) the other party had reason to know of the mistake or his fault caused the mistake.

*See Meek,* 26 Cl.Ct. at 1362 (quoting Restatement § 153).

■ Clearly, under either approach, substantially similar showings are required.[12] First, when attempting to prove a mistake entitling one to avoid a contract, the mistaken belief must have constituted or concerned a basic assumption of the contract. In addition, whether alleging unilateral or mutual mistake, a party must demonstrate that he did not bear the risk of a mistake. Restatement § 154(a) provides that a party bears the risk of a mistake when "the risk is allocated to him by agreement of the parties." Therefore, in the case at bar, in order for plaintiffs to state a claim for rescission based on mistake, Mr. Morris must not have borne the risk of the mistake under the terms of the contract as alleged in the complaint, and the mistake must have been made as to a basic assumption of the contract.

■ "A mistake ... does not make the contract voidable unless it is one as to a basic

---

12. Comment b, Restatement § 153, reads, in pertinent part, as follows: "In order for a party to have the power to avoid a contract for a mistake that he alone made, he must at least meet the same requirements that he would have had to meet had both parties been mistaken (§ 152)."

assumption on which both parties made the contract." Restatement § 152, comment b. At bar, taking the facts as alleged, the promptness of Mr. Anderson's rent payments was not a basic assumption of the parties. As discussed above, Mr. Anderson was entitled under his agreement with the SBA to terminate his tenancy with 30 days' notice at any time. Thus, because it was clearly foreseeable that Mr. Anderson might leave shortly after plaintiffs acquired the property, any belief about the tenant's permanence could not have been a basic assumption of the contract. The contract was for the sale of a building, period. The only mention of the tenant in the bid materials was in the property description section which was obviously excluded from the contract and for which liability was explicitly disclaimed. Accordingly, Mr. Anderson's promptness was not a basic assumption of the parties to the contract at issue before this court.

▪ Furthermore, the contract plainly states that the property was to be sold "as is" and "where is" (Am.Complaint Exh. A at 7, ¶ 3). This expressed provision of the purchase agreement allocates the risk of any mistaken belief about the property to the purchaser.[13] Mr. Morris contracted to buy the building "as is," not as he allegedly and subjectively believed it to be with a perpetually current rent-paying tenant. Thus, he bore the risk that his belief was not in accordance with the facts. This finding is compelled by our earlier determination that Mr. Morris was not justified in relying on the alleged misrepresentations inasmuch as a holding that a party was not entitled to rely on the statement causing his mistaken belief necessarily means that that party bore the risk of his mistake. Therefore, given the facts as alleged in the complaint (i.e., the contract language), plaintiffs could not prove that they did not bear the risk of a mistake. As a consequence of the foregoing, they fail to state a claim for rescission of the contract based on a mistake of fact, whether unilateral or mutual.

### iii. Failure to Disclose Superior Knowledge

Finally, plaintiffs aver that their first count states a claim for compensatory relief under the "doctrine of superior knowledge." Specifically, they allege that the government possessed superior knowledge about the tenant, in the form of the payment record, which it failed to forthrightly disclose to Mr. Morris, the purchaser of the property. By failing to fully and accurately disclose such information, contend plaintiffs, defendant breached a duty owed to them. As a result, they maintain that they are entitled to compensatory damages.

▪ The "doctrine of superior knowledge" supplies the basis of a breach of contract claim if a plaintiff succeeds in proving that it—

(1) undertook to perform without vital knowledge of a fact that affects performance costs or direction, (2) the government was aware the contractor had no knowledge of and had no reason to obtain such information, (3) any contract specification supplied misled the contractor, or did not put it on notice to inquire, and (4) the government failed to provide the relevant information.

*GAF Corp. v. United States,* 932 F.2d 947, 949 (Fed.Cir.1991) (citations omitted). *See also Petrochem Services, Inc. v. United States,* 837 F.2d 1076, 1079 (Fed.Cir.1988). However, we need not conduct a detailed analysis of the complaint to see if plaintiffs can meet this test. It is obvious from the outset that this doctrine has no applicability to the facts at bar.

▪ The line of cases upon which plaintiffs rely spring from the government procurement context, where the contractor has agreed to provide goods or services or both to the government. The doctrine has no applicability where, as on the facts before this court, the government is acting as a vendor of surplus property. Furthermore, "[i]n analyzing these cases, it is clear to this

---

**13.** Restatement § 154(c) instructs that a party bears the risk of mistake when the court allocates the risk to him because it is reasonable in the circumstances to do so. Given the totality of the circumstances, as explicated throughout the discussion, we find that it is reasonable that plaintiffs bear the risk of their alleged mistake.

Court that the doctrine of superior knowledge covers *only* unexpected costs in the *performance* of the contract." *Wm. T. Thompson Co. v. United States,* 26 Cl.Ct. 17, 24 (1992) (emphasis in original). At bar, plaintiffs have not alleged that they encountered any unexpected costs in performing the contract. Their performance was complete when they tendered the agreed price at the agreed time and place. The fact which was allegedly not disclosed, the tenant's payment history, had no bearing on and did not affect *"performance costs or duration of performance." Id.* Therefore, plaintiffs' claim does not fall within the ambit of the "superior knowledge" doctrine. Consequently, we find that Count I fails to state a claim of "failure to disclose superior knowledge."

Having surveyed the allegations of the first count and assumed them to be true, and having examined each of plaintiffs' proffered legal theories, we have found no legal basis upon which we could grant plaintiffs' requested relief. Therefore, we conclude that plaintiffs have failed to state a claim upon which relief can be granted in Count I. Accordingly, Count I must be dismissed in its entirety.

#### b. Count II

In Count II, plaintiffs seek a money judgment against the defendant for damages allegedly caused by defendant's breach of contract. Plaintiffs aver that the government failed to convey the property within the contractually-agreed time (15 days). Rather, contend plaintiffs, defendant was unable to convey title to the property for more than 90 days after contract formation. Furthermore, plaintiffs assert that the SBA mismanaged the property during the time between the auction and the settlement, at least in part, by failing to collect rent from Mr. Anderson, the main tenant. As a result, plaintiffs maintain that Mr. Campbell, the subtenant, leased new space elsewhere. Additionally, plaintiffs allege that they had to evict Mr. Anderson, and have since been unable to find a new lessee for the garage/warehouse building, despite spending money to improve the property. Therefore, plaintiffs state that they are entitled to compensatory damages for the loss of rental income from both Mr. Anderson and Mr. Campbell, the legal fees incurred in evicting Mr. Anderson, and the repair expenses incurred in trying to attract a new tenant.

Plaintiffs have alleged two "breaches of contract" in support of their claim for money damages. First, they contend that defendant failed to convey the property in accordance with the contract provision allowing 15 days from the acceptance of the bid for the conveyance. Second, plaintiffs assert that defendant mismanaged the property, breaching its "obligations of ownership." (Am.Complaint ¶ 20). With respect to the claim of mismanagement, plaintiffs have failed to point to any contractually-created duty that was arguably breached. Because plaintiffs have not identified any express or implied contractual obligation that was breached, the claim of mismanagement alleged in the complaint fails to state a claim. Therefore, only plaintiffs' claim of delay in the closing remains for our consideration of the second count.

The General Terms of Sale in the contract provided as follows:

> The successful bidder shall on a mutually agreeable date not later than 15 days after acceptance of the bid, tender to the Government the balance of the purchase price. Upon such tender, the Government *shall* deliver the instrument(s) of conveyance.

Am.Complaint Exh. A at 7, ¶ 11 (emphasis added). Thus, the closing was to take place within 15 days of the auction, or by September 6, 1991. Plainly, plaintiffs have alleged in the complaint that the government breached this express contract provision by being unable to convey title to the property until November 25, 1991. They state in the complaint that defendant was unable to convey because of unreleased liens on the property. Because plaintiffs have alleged facts which if proved would constitute a breach of contract, Count II may not be dismissed for failure to state a claim.

#### c. Count III

With respect to the third claim for relief, alleging breach of the implied obligation of good faith and fair dealing, it is unclear from

its moving brief whether defendant is moving to dismiss for failure to state a claim or only for lack of subject matter jurisdiction. At any rate, the primary thrust of defendant's argument is that it is entitled to summary judgment on Count III. In this connection, we note that defendant has relied on matters outside the pleadings (*i.e.,* affidavits and exhibits) that we do not exclude. Accordingly, following RCFC 12(b), we shall treat defendant's motion as solely one for summary judgment pursuant to RCFC 56.[14]

In sum, then, we find that plaintiffs have failed to state a claim upon which relief can be granted in Count I. However, to the extent that plaintiffs have alleged a breach of contract, for failure to convey within 15 days, we conclude that Count II of the complaint successfully states a claim for relief.[15] Finally, defendant's introduction and reliance on matters outside the pleadings converts the motion to dismiss Count III, for failure to state a claim, into one for summary judgment. Therefore, we now turn to consider the parties' cross-motions for summary judgment as to Counts II and III.

### 3. Summary Judgment (RCFC 56)

Lastly, both parties in this matter have moved for summary judgment. Under RCFC 56, summary judgment is appropriate when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Material facts are to be identified by reference to the applicable substantive law, and only disputes over facts which might affect the outcome of the case are considered material. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

Moreover, the moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). This bur-

den may be discharged by the moving party by pointing out to the court the "absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554; *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.,* 833 F.2d 1560, 1563 (Fed.Cir.1987). Then, the burden falls to the nonmovant to produce affidavits or other evidence demonstrating the existence of a genuine issue of material fact for trial. *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *Sweats Fashions,* 833 F.2d at 1562. In this regard, the nonmovant may not simply rely on unsupported allegations in the pleadings. *Id.*

When evaluating a motion for summary judgment, the evidence and all inferences drawn from it must be viewed in the light most favorable to the party opposing the motion. *Litton Indus. Prod., Inc. v. Solid State Sys. Corp.,* 755 F.2d 158, 163 (Fed.Cir. 1985). Therefore, mindful of the foregoing standard, we must consider the evidence in the record as it relates to Counts II and III of the complaint. First, we examine the record for any genuine issues of material fact. Only if none can be discerned do we consider whether either party is entitled to judgment as a matter of law. Conversely, if a genuine issue is found to exist, the cross-motions must be denied.

### a. Count II

 At the outset, we recall that plaintiffs allege in the second count of the complaint that defendant breached the purchase contract by failing to convey the property within the contractually-required time. Both parties agree on what the terms of the contract provided as both have submitted the identical bid package as an exhibit. In this connection, the parties agree that the settlement was supposed to have been completed by September 6, 1991. Furthermore, there is no dispute that the settlement finally took place on November 25, 1991. Finally, defen-

---

14. Rule 12(b) provides in pertinent part:

 If, on a motion asserting the defense numbered (4) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment, and disposed of as provided in Rule 56

. . . .

15. Of course we express no opinion at this time concerning whether or not plaintiffs could successfully prove any recoverable damages, even assuming they can succeed in proving the alleged breach.

dant acknowledges that the settlement was delayed because it needed to secure the release of a deed of trust as well as several tax liens on the property. Therefore, there is no dispute that the government was unable to and did not convey the property within the required time. With respect to Count II, then, there is no genuine issue of material fact.

▆ On these undisputed facts, plaintiffs are entitled to judgment as a matter of law. Plaintiffs have stated in their briefs that they are moving for summary judgment on the issue of liability alone and not on damages. The government breached the express provision of the contract requiring conveyance within 15 days from the date of the acceptance of Mr. Morris' bid.[16] Accordingly, defendant is liable for any damages caused by the delay in closing. Defendant, for its part, does not argue that a breach did not occur. Rather, defendant argues that the breach was not material. However, the materiality of the breach is not dispositive where plaintiffs are seeking money damages. On the other hand, "[u]pon [a] *material breach* of a contract the non-breaching party has the right to discontinue performance of the contract...." *Stone Forest Indus., Inc. v. United States*, 973 F.2d 1548, 1550 (Fed.Cir. 1992) (emphasis added). Here at bar, plaintiffs are not seeking to terminate the contract and cease performance thereof. Instead, plaintiffs' Count II merely seeks compensatory money damages. In such case, even where a breach of contract is not material, the non-breaching party retains a sub-

stantive "claim for damages for *partial breach.*" *Pinewood Realty Ltd. Partnership v. United States*, 617 F.2d 211, 215, 223 Ct.Cl. 98 (1980) (emphasis added).[17] Therefore, we hold on this record that plaintiffs are entitled to summary judgment on the issue of liability on their claim that the government breached the sales agreement by failing to convey within the contractually-stipulated time. We do not address the issue of the quantum of damages as that factual issue is left to be resolved at a later date (*e.g.*, at trial).

### b. Count III

▆ In Count III, plaintiffs allege that defendant breached its implied obligation of good faith and fair dealing. This obligation of good faith dealing is implied in every contract with the government. *Asco–Falcon II Shipping Co. v. United States*, 18 Cl.Ct. 484, 491–92 (1989). However, it is well-settled that government officials are presumed to act in good faith in the discharge of their duties. *Spezzaferro v. Federal Aviation Admin.*, 807 F.2d 169, 173 (Fed. Cir.1986); *Torncello v. United States*, 681 F.2d 756, 770, 231 Ct.Cl. 20 (Ct.Cl.1982); *Kalvar Corp. v. United States*, 543 F.2d 1298, 1301, 211 Ct.Cl. 192 (1976). Furthermore, it takes "well-nigh irrefragable proof" to the contrary to induce the court to abandon this rebuttable presumption. *Kalvar*, 543 F.2d at 1301–02; *Continental Collection & Disposal, Inc. v. United States*, 29 Fed.Cl. 644, 652 (1993).

---

16. While technically Mr. Morris' tender of payment was a condition precedent to the government's obligation to convey, both parties knew and agreed that the government was unable to convey the property at the appointed time. Therefore, tender was not required to put the government in breach as the law will not require the doing of a futile act (*i.e.*, showing up on September 6 and tendering payment knowing full well that the government was unable to convey). *Northern Heel Corp. v. Compo Industries, Inc.*, 851 F.2d 456, 461 (1st Cir.1988). *See also Ohio v. Roberts*, 448 U.S. 56, 74, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597 (1980); *Appalachian Regional Hosps., Inc. v. United States*, 576 F.2d 858, 866, 217 Ct.Cl. 1 (1978).

17. Defendant also contends that plaintiffs' conduct in accepting the government's performance estops them from attempting to claim breach and

rescind the contract. However, in their second count, plaintiffs are seeking money damages, not rescission of the contract. Defendant further notes that an election to continue the contract on the part of plaintiffs constitutes a waiver of *material breach*. As the very cases that defendant cites make clear, a material breach gives the non-breaching party the right to terminate the contract. If the non-breacher elects to continue contract performance, his right to end the contract is waived. Nevertheless, the non-breaching party retains a claim for damages for *partial breach*. *Cities Service Helex, Inc. v. United States*, 543 F.2d 1306, 1313, 211 Ct.Cl. 222 (1976). Accordingly, defendant's arguments concerning estoppel and waiver are without merit where, as here, plaintiffs are seeking money damages rather than to terminate the contract.

In this connection, a plaintiff *must* allege and prove facts constituting malice or, in other words, a specific intent to injure the plaintiff on the part of a government official. *Torncello,* 681 F.2d at 771; *Kalvar,* 543 F.2d at 1302. Moreover, the required "malice" or "specific intent to harm" may be demonstrated only by clear and strong proof of specific acts of bad faith. *Torncello,* 681 F.2d at 771; *Continental,* 29 Fed.Cl. at 652. Therefore, in order to determine whether any genuine issue of material fact exists with respect to Count III, we must examine the record for evidence of malice or an intent to injure the plaintiffs as demonstrated by specific acts of bad faith.

Plaintiffs make two principal allegations of bad faith. First, plaintiffs allege that the government pressured Mr. Morris to accept conveyance of the property by quitclaim deed while several tax liens remained on the property for taxes owed by the former owner, who was the husband of a former SBA employee. Both parties agree that prior to settlement, there were an unreleased deed of trust and several tax liens on the property. Further, there is no dispute that the tax liens were placed on the property owned by Richard DeFranco, trading as both Stern Chemical Co. and Capitol Chemical Industries, Inc. Nor do the parties dispute that Richard DeFranco was married to Kathleen DeFranco, a former SBA employee. Finally, the parties agree that these tax liens remained on the property until the SBA succeeded in satisfying the outstanding taxes and obtaining the release of the liens.

On the other hand, the parties do dispute whether or not Ms. Rousey, acting for the government, attempted to "pressure" Mr. Morris into settling on the property before the liens and the former deed of trust had been released. However, this is not a genuine issue of material fact, because even if it were proved that Ms. Rousey did pressure Mr. Morris to settle, plaintiffs would not have demonstrated the requisite bad faith. Ms. Rousey's pressuring Mr. Morris to settle would not, *ipso facto,* constitute *malice or a specific intent to injure* plaintiffs because the reasonable inference is that Ms. Rousey may simply have been overly eager to close the deal. "Pressure to settle" without more, for example fraud or duress, is not probative of a specific act of bad faith.

Moreover, the mere fact of the relationship between Richard DeFranco and his wife, a former SBA employee, is insufficient to show bad faith in any actionable manner. Plaintiffs have, therefore, failed to adduce any probative evidence that this relationship in any way illicitly motivated the behavior of any government official against plaintiffs. Accordingly, there is no genuine issue of material fact with respect to plaintiffs' first allegation of bad faith. Viewed in the light most favorable to the plaintiffs, therefore, we are constrained to hold that the evidence in the record cannot support a finding that any "specific act of bad faith" was committed. Therefore, the court cannot abandon the rebuttable presumption that government officials act in good faith, based on the first allegation of bad faith.

Plaintiffs also make a second allegation of bad faith. They contend that the government concealed from them the fact that Mr. Anderson was not paying rent from August through November of 1991 and, furthermore, that Ms. Rousey misled Mr. Morris causing him to close the sale by saying only that the tenant had not paid the November rent. The parties are in agreement as to many of the relevant facts. First, the parties do not dispute that Mr. Anderson, the tenant, failed to pay rent for any month after July 1991 (*i.e.,* from August through November 1991). Moreover, there is agreement that, at the settlement on November 25, Ms. Rousey told Mr. Morris that Mr. Anderson had not paid the November rent, in response to his request that the rent for that month be prorated. In addition, it is undisputed that Mr. Morris asked Ms. Rousey for a copy of Mr. Anderson's payment record and proceeded to settle that same day. Finally, both parties agree that on November 26, 1991, the day after the closing, Ms. Rousey sent plaintiffs a copy of the rent payment record, which disclosed that Mr. Anderson had *not paid rent for any month since July, 1991.*

In one of his affidavits, Mr. Morris further states that, at the settlement, after Ms. Rousey said that the tenant had not paid the

November 1991 rent, he asked her when Mr. Anderson had stopped paying rent, to which she responded "in October." (Morris Decl. ¶ 4). By contrast, Ms. Rousey, in one of her affidavits, states that she had been unaware that the tenant had stopped paying rent, until after the settlement when she procured the payment record for Mr. Morris. These conflicting statements create a genuine issue of material fact as to knowledge/concealment.

Viewed in the light most favorable to the defendant, as we must do in evaluating plaintiffs' subject motion, the government has demonstrated a material issue concerning what Ms. Rousey knew at the time leading up to and including the settlement. Therefore, plaintiffs are not entitled to have their motion for summary judgment granted because, if Ms. Rousey was innocently unaware of Mr. Anderson's failure to pay rent, then plaintiffs would not have shown the malice or bad faith necessary to overcome the presumption that Ms. Rousey acted in good faith.

Conversely, viewed in the light most favorable to the plaintiffs, pursuant to defendant's motion, plaintiffs have succeeded in pointing out a genuine issue of material fact. If, as Mr. Morris avers, Ms. Rousey said that the tenant had ceased paying rent in October, when in fact Mr. Anderson stopped after July's rent, then plaintiffs could show that Ms. Rousey had deceived them as to the payment history of the tenant. This deception would bring into question Ms. Rousey's contention that she was unaware of the failure by Mr. Anderson to pay his rent. Furthermore, the deception (along with the prior concealment) about Mr. Anderson's payment history would be sufficient to show a specific act of bad faith. Accordingly, defendant is likewise not entitled to summary judgment. Genuine issues of material fact exist for trial (*i.e.*, what did Ms. Rousey know, when did she know it, and what did she say concerning the tenant's payment of rent (or lack thereof) both before and at the settlement?).

Finally, we note that "courts have some latitude to *deny* summary judgment even when there is technically" no dispute as

to a material fact. *First Interstate Bank v. United States,* 27 Fed.Cl. 348, 353 (1992) (emphasis added).[18] At bar, it might be arguable for this court to hold that there was no genuine issue of material fact because Mr. Morris' and Ms. Rousey's affidavits do not technically contradict each other. Put simply, it is simultaneously possible that Ms. Rousey did not know that Mr. Anderson had failed to pay rent from August onwards and also stated at the closing that Mr. Anderson had ceased paying rent in October. Therefore, taking both uncontradicted statements as true, the court might find that plaintiffs had failed to demonstrate any genuine issue concerning Ms. Rousey's knowledge of Mr. Anderson's nonpayment of rent. Thus, on this hypothesis, summary judgment could be granted in favor of defendant on Count III because if Ms. Rousey did not know that Mr. Anderson was not paying the rent, then she did not act in bad faith.

However, to do so would be unfair at this juncture, given the near impossibility for plaintiffs to present evidence on Ms. Rousey's mental state by affidavit. "The court should have the freedom to allow the case to continue when it has any doubt as to the wisdom of terminating the action prior to a full trial." *Id.* (quoting 10A C. Wright, A. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2728 at 187–88 (1983)). As in *First Interstate Bank,* "the credibility of the witnesses is crucial to this case. For this reason, . . . summary disposition is inappropriate." *Id.* at 354 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249, 106 S.Ct. at 2510).

Therefore, on Count II, plaintiffs are entitled to summary judgment on the issue of the government's liability for breach of contract in failing to convey title to the property within the appropriate time. Plaintiffs are entitled to show their damages, if any, at trial. However, with respect to Count III of the complaint, we hold that there is a genuine issue of material fact for trial. Furthermore, we additionally find that fairness dictates that summary judgment on Count III is

---

18. Conversely, "it is true that a court *may not* grant summary judgment when a material factu-al dispute exists." *First Interstate Bank,* 27 Fed. Cl. at 353 (emphasis added).

inappropriate in this case. Accordingly, neither party is entitled to summary judgment on the third claim for relief, and both motions must, therefore, be denied on that count.

## CONCLUSION

For all of the foregoing reasons, the following is hereby ordered:

i. Defendant's motion to dismiss the petition for lack or subject matter jurisdiction pursuant to RCFC 12(b)(1) is DENIED.

ii. Defendant's motion to dismiss Count I of the complaint (premised on misrepresentation, mistake of fact, and failure to disclose superior knowledge) for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(4), is GRANTED.

iii. Defendant's motion to dismiss Count II of the complaint for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(4), is DENIED as to the claim of delay in the closing, but GRANTED as to the claim of mismanagement.

iv. Defendant's motion to dismiss Count III for failure to state a claim upon which relief can be granted, pursuant to RCFC 12(b)(4), is DENIED, as the court elects to treat said motion as a motion for summary judgment. *See* RCFC 12(b).

v. Plaintiffs' motion for summary judgment, pursuant to RCFC 56, on Count II (claim of delay in closing), is GRANTED only on the issue of liability, and defendant's cross-motion for summary judgment on Count II is, therefore, necessarily DENIED.

vi. On Count III, both parties' cross-motions for summary judgment, pursuant to RCFC 56, are DENIED because a genuine issue of material fact exists.

With respect to the issues remaining for trial, Count II as to the issue of damages and Count III on the substantive issue, the following Appendix G schedule is hereby provided:

1. Discovery shall be completed by both parties on or before October 27, 1995.

2. The parties shall comply with paragraph 10 of Section V of Appendix G by November 30, 1995.

3. Plaintiff shall comply with paragraphs 11–13 * of Section V of Appendix G on or before December 15, 1995.

4. Defendant shall comply with paragraphs 11–13 * of Section V of Appendix G on or before January 8, 1996.

5. The parties are not required to file proposed findings of fact (paragraphs 11(a) and 11(b)).

6. The parties shall comply with paragraphs 14–15 of Section V of Appendix G on or before January 8, 1996.

As to paragraph 14 (Stipulations), the joint memorandum shall be in two parts:

a. The first part shall contain separately numbered paragraphs covering all matters to which the parties have stipulated during the course of the proceedings. The stipulations must be comprehensive and the fact that any matter may have been established during discovery by admission or otherwise is not grounds for omitting it from stipulation. A party may not refuse to stipulate as to the content or purport of a document simply by claiming that the document is the best evidence of its content. Nor is the fact that a party deems a fact irrelevant a sufficient basis for refusing to stipulate to its existence. Relevance may be argued in the Memorandum of Contentions of Fact and Law.

b. The second part of the memorandum shall set forth any matters a party proposes to be stipulated, as to which the parties have failed to reach agreement, and which the proponent of the stipulation believes are not reasonably subject to dispute. Each such proposed stipulation shall be set forth in full, together with the reasons-the proponent believes the matter is not subject to dispute. The opposing party must explain beneath why and to what extent it believes the matter to be in dispute.

---

* Witnesses shall be characterized as fact, expert, or fact/expert. The anticipated length of the trial and requested trial location shall also be stated.

7. If contemplated, the parties shall comply with paragraph 16 of Section V of Appendix G on or before January 8, 1996.

8. The pretrial conference shall be held at 10:00 a.m. on January 29, 1996, at the National Courts Building, 717 Madison Place, N.W., Washington, D.C. 20005. The exact courtroom location will be posted in the lobby at that time. A trial date and location will be set at this conference.

No enlargements of this Appendix G schedule shall be granted *except for grave circumstances, duly documented and supported by affidavit(s)*.

IT IS SO ORDERED.